J-S27002-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MELANIE ANNE BARRY | : | |
| | : | |
| Appellant | : | No. 20 MDA 2023 |

Appeal from the Judgment of Sentence Entered October 27, 2022
In the Court of Common Pleas of Juniata County Criminal Division at
No(s):  CP-34-CR-0000180-2019

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:        **FILED: OCTOBER 3, 2023**

Appellant, Melanie Anne Barry, appeals from the aggregate judgment of sentence of 15 to 42 months' incarceration, imposed after a jury convicted her of theft of leased property (18 Pa.C.S. § 3932(a)) and receiving stolen property (18 Pa.C.S. § 3925(a)).  Appellant solely argues that the jury's verdict was contrary to the weight of the evidence presented at trial.  After careful review, we affirm.

Appellant's convictions stemmed from her renting, and then failing to return, a U-Haul truck.  Appellant's jury trial took place on September 27, 2022, at the close of which she was convicted of the above-stated offenses. Appellant was sentenced on October 27, 2022, to the term set forth *supra*. She filed a timely post-sentence motion, which the court ultimately denied. Appellant then filed a timely notice of appeal, and she timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors

complained of on appeal. The court filed its Rule 1925(a) opinion on March 13, 2023.

Herein, Appellant states one issue for our review:

1. Did the trial court err in denying Appellant's post[-]sentence motion requesting vacated sentences, arrest of judgment[,] and a new trial, where the verdict for the charges of theft of leased property and receiving stolen property were so contrary to the weight of the evidence that it shocks one's sense of justice, where the testimony at trial suggests that … Appellant lacked the requisite intent to commit the crimes as alleged?

Appellant's Brief at 5 (unnecessary capitalization omitted).

To begin, we recognize that,

our standard of review for a weight-of-the-evidence claim is an abuse of discretion. As we have often reminded appellants, "An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017)….

\*\*\*

"An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa. Super. 2017). To mount an abuse-of-discretion attack against the trial court's determination that [the] guilty verdict[ was] not so against the weight of the evidence as to shock that court's own conscience, [an appellant must] … demonstrate how the trial court's ruling overrode the law, was manifestly unreasonable, or the product of bias, prejudice, ill-will or partiality.

*Commonwealth v. Rogers*, 259 A.3d 539, 541 (Pa. Super. 2021), *appeal denied*, 280 A.3d 866 (Pa. 2022) (emphasis added by *Rogers* omitted).

Here, Appellant contends that the court abused its discretion in denying her motion for a new trial "as the verdicts were so contrary to the weight of the evidence as to shock one's sense of justice." Appellant's Brief at 10. Specifically, Appellant maintains that "[t]he testimony presented at trial revealed that [Appellant] did not have the requisite intent to commit the crimes as alleged where the testimony presented indicated that Appellant believed the financial obligation" to extend the rental of the U-Haul truck "was met through a card on file, Appellant contacted U-Haul to extend the rental periods, and regular payment holds were placed on the account." *Id.* Appellant also stresses that she "stored the U-Haul[] in plain view" and it was "not altered, damaged, or converted for alternate use." *Id.* at 14. Thus, she maintains that the weight of the evidence demonstrates she lacked the intent to steal the U-Haul, and the court abused its discretion by denying her post-sentence motion for a new trial.

No relief is due. "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a) (defining receiving stolen property). Additionally, "[a] person who obtains personal property under an agreement for the lease or

- 3 -

rental of the property is guilty of theft if he intentionally deals with the property as his own." 18 Pa.C.S. § 3932(a) (defining theft of leased property).

Here, the trial court first addressed why the jury's convicting Appellant of receiving stolen property was not contrary to the weight of the evidence, stating:

> At trial, the Commonwealth presented the testimony of Megan McNemar, an employee of Mifflintown Hardware, the business through which … Appellant arranged to rent a 2017 Ford E-450 U-Haul. Ms. McNemar stated that … Appellant rented the U-Haul through an online application. N.T. [Trial, 9/27/22,] … at 35. After the date on which … [A]ppellant was to return the U-Haul had passed, and multiple extensions of the rental had been granted, [Ms.] McNemar's manager informed her to take steps to collect the U-Haul, which included calling the Pennsylvania State Police. [*Id.*] at 38-40.
>
> Furthermore, the Commonwealth presented testimony from Pennsylvania State Police Trooper Dexter Hardin that … Appellant rented the U-Haul, and held possession from the end of May until the end of July[] 2019. [*Id.*] at 99. The U-Haul was eventually found, along with a second U-Haul rented by the Appellant's daughter, Chasity Barry, in the possession of Appellant and her daughter, and no payment for the rental of the U-Haul was ever received by U-Haul or Mifflintown Hardware. [*Id.*] at 47.
>
> There was testimony presented by Chasity Barry, Trooper Hardin, and … Appellant that the U-Haul was being used as a personal vehicle while in the Appellant's possession. [*Id.*] at 72, 98, 136. Further, there was testimony that after the credit card that was used by Appellant [to rent the U-Haul] was [eventually] declined, and several demands [were made] from the U-Haul company that the rental be returned, she continued to keep possession of the U-Haul. [*Id.*] at 45. During this time, [Appellant] refused to answer any of the telephone or written communications from U-Haul and Mifflintown Hardware demanding return of the [truck]. [*Id.*] at 54.
>
> Testimony was also provided by [Appellant's] friend, David Penc, that the credit card used to arrange the rental of the U-Haul was

not Appellant's credit card, nor was Appellant authorized to make the full purchase of the rental on that card. Rather, the card was only authorized by the owner, David Penc, to be used for the original deposit for the U-Haul. [*Id.*] at 147. However, as was mentioned previously, ultimately no payments for the rental were ever made by … Appellant.

The evidence presented by the Commonwealth at trial proved that … Appellant intentionally retained movable property of another knowing that it was not hers to retain. Knowing that the vehicle was the property of U-Haul, … Appellant continued to keep possession of, and use[,] the U-Haul both for personal transportation as well as storage well after the time she was to return it. She refused to respond to, or contact[,] U-Haul[] or Mifflintown Hardware regarding the rental, and she did not make payments for the rental of the U-Haul. U-Haul then had to take affirmative action to recover their property. Therefore, the Commonwealth presented substantial evidence at trial that … Appellant intentionally retained movable property of another knowing that it was stolen. The jury's guilty verdict on the [t]heft by [r]eceiving [s]tolen [p]roperty charge was not against the weight of the evidence.

Trial Court Opinion (TCO), 3/13/23, at 2-3.

Next, the court found that the following evidence demonstrated that the jury's verdict was not contrary to the weight of the evidence regarding Appellant's conviction for theft of leased property:

The Commonwealth presented testimony by Ms. McNemar[] that on May 25, 2019[,] at 7:22 p.m., … Appellant completed an online application to rent a U-Haul truck for a period of thirty (30) miles, or two-days. N.T. [Trial] at 44. After those two days had passed and the truck was not returned, U-Haul automatically renewed the rental of the truck until the credit card used to set up the rental was declined. [*Id.*] at 38-39. Furthermore, there was testimony by Ryan Read, the regional manager of U-Haul, that the U-Haul truck was reported stolen on July 30, 2019[,] after the determination was made that the truck would not be returned. [*Id.*] at 49.

Prior to reporting the vehicle stolen, the company attempted to call … Appellant, and when that failed, they sent a certified letter

demanding the return of the truck. When those efforts failed, they proceeded to the next step, which involved reporting the truck stolen. [*Id.*] at 49-50. The certified demand letter sent to Appellant was dated July 11, 2019. [*Id.*] at 52. The demand letter was received on July 17, 2019. [*Id.*] at 54. Once the company did not get a response from Appellant after the demand letter was received, the company reported the vehicle stolen. [*Id.*] at 55.

After the U-Haul was reported stolen, Trooper Hardin located the U-Haul truck on Chestnut Street in Lewistown, Pennsylvania[,] with the keys in the possession of … Appellant. [*Id.*] at 85. … Appellant admitted that she had been using the U-Haul for personal transportation, as well as storage for her belongings. [*Id.*] at 87, 88, 98, 136.

The Commonwealth presented substantial evidence at trial to show that … Appellant was in possession of the U-Haul for a period of sixty-seven (67) days[,] over two months more than the initial rental period.[1] *See id.* at 48.] … Appellant completed an online application to lease the U-Haul, and intentionally held possession of the U-Haul after the time her lease was to end. … Appellant was using the U-Haul as her own personal vehicle. Trooper Hardin was given the keys to the U-Haul by Appellant when he came in contact with her on July 30, 2019. [*Id.*] at 97-100. Because the Commonwealth presented substantial evidence that … Appellant was in possession of the U-Haul truck, using it as her own property, without paying for the truck, substantial evidence was presented showing that she committed the crime of [t]heft of [l]eased [p]roperty. The decision by the jury was not against the weight of the evidence, and a new trial should not be granted.

TCO at 4-5.

After reviewing the record, we discern no abuse of discretion in the trial court's decision. While Appellant claims that her intent was not to steal the

_____

[1] We note that time between May 25, 2019 (the day Appellant rented the truck), and July 30, 2019 (the day Trooper Hardin recovered the vehicle), is 66 days. It is unclear why the Commonwealth's evidence indicated that Appellant had possession of the U-Haul truck for 67 days, but that discrepancy is not dispositive of Appellant's weight-of-the-evidence claim.

truck, as shown by the fact that she allegedly contacted U-Haul "multiple times" to extend her rental of the truck, and she believed that valid "holds were placed" on the credit card to pay for each extension, the record does not support her contentions. Appellant's Brief at 12. Namely, Ms. McNemar testified that she recalled only **one** conversation with Appellant after the initial rental of the U-Haul wherein Appellant indicated she "needed more time" and the store extended her rental. N.T. Trial at 37. A "hold charge" was placed on the credit card Appellant used to rent the truck for that extension. ***Id.*** However, after that extension lapsed, "[t]he truck still wasn't returned." ***Id.*** Ms. McNemar stated that "there were multiple phone calls" from the store to Appellant "that were either left [to go to] voicemail or [were] not answered." ***Id.*** Accordingly, the store "kept extending" the rental ***automatically***, continuously putting "charges … as holds on the credit card" until the charges were finally declined and the truck was reported stolen. ***Id.*** at 38, 40.

Clearly, this testimony indicates that Appellant only asked for one extension, after which she did not return the truck and simply ignored the calls from the company to do so. Furthermore, Appellant also ignored the certified letter sent from U-Haul that explicitly notified her that she had "violated [the] rental agreement and action[ was] being initiated to report that this equipment was stolen by [Appellant]." ***Id.*** at 54. Although Appellant received this letter on July 17, 2019, she took no action to return the truck, which was ultimately seized by police on July 30, 2019. ***Id.*** at 54, 56. This evidence demonstrates that Appellant leased the truck and then failed to

return it, intentionally treating it as her own after she knowingly stole it.  The court did not abuse its discretion in concluding that the jury's verdict was not contrary to the weight of the evidence.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/3/2023